1  Kevin T. Snider, State Bar No. 170988
2  *Counsel of record*
   Matthew B. McReynolds, State Bar No. 234797
3  PACIFIC JUSTICE INSTITUTE
4  9851 Horn Road, Suite 115
   Sacramento, CA 95827
5  Tel.:  (916) 857-6900
6  Email:  ksnider@pji.org
          mmcreynolds@pji.org
7
8  Attorneys for Plaintiffs

9          **IN THE UNITED STATES DISTRICT COURT**
10         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11  TEEN RESCUE, CARLTON          )  Case No.:
12  WILLIAMS as an individual and on )
    behalf of all others similarly situated, )
13                                  )  **COMPLAINT FOR INJUNCTIVE**
14       Plaintiffs,               )  **AND DECLARATORY RELIEF [42**
                                    )  **U.S.C. 1983]**
15                                  )
    v.                              )
16                                  )
                                    )       [Demand for Jury Trial]
17  XAVIER BECERRA, Attorney General )
18  of the State of California, in his official )
    capacity, WILLIAM LIGHTBOURNE, )
19  Director of the State Department of )
    Social Services, in his official capacity, )
20  Butte County Department of Children's )
21  Services Division and DOES 1-50, )
                                    )
22       Defendants.               )
23                                  )
24
25
26
27
28

Complaint

-1-

## INTRODUCTION

1.    The Community Care Facilities Act requires that private boarding schools allow students full autonomy on matters of religion and sexual identity.  No exception is provided for religious educational institutions.  A religious ministry that operates a Christian boarding school brings a facial and as applied constitutional challenge to the Community Care Facilities Act and its regulations.

2.    The school has a statement of faith, employs only Christians, and intertwines a Christian perspective in all subjects taught.  Further, the school deals with negative behaviors through spiritual guidance, schedules daily religious devotions, and provides opportunities for: (1) the study of Christian courses, (2) a weekly Wednesday evening Bible study, and (3) a Christian church service on Sunday.  It does not provide equal opportunities for other religions or secular worldviews.  As part of its structured environment, the school houses the boys and girls separately and has sex-segregated learning environments.  The theological position of the school is conservative.  Specifically as it relates to human sexuality, it holds a hetero-normative view of relationships.  Sexual relationships are confined to a man and a woman who are married to each other.  In order to help pupils stay focused on their studies, it discourages, and indeed prohibits, physical and romantic entanglements between or among the sexes.  This biblically-based manner of running the school places the institution in conflict with the Community Care Facilities Act.  Violation of the Community Care Facilities Act is a criminal offense.

3.    A class representative of the parents and guardians of the students challenges the Community Care Facilities Act because of the unconstitutional interference with the free exercise of religion and parental rights.  In sum, the parents choose to enroll their children in this private Christian school because of the academic course of study, the structured environment, to encourage their

children in elements of proper social behavior necessary for good citizenship, and the desire to inculcate in their children the moral standards and religious beliefs provided by this religious institution.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331and 1343(3)-(4) which confer original jurisdiction on federal district courts in suits to reduce the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law.

5.    The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and includes a request for a speedy decision and an advance on this Court's calendar under FRCP 57.

6.    Venue is proper under 28 U.S.C. § 1391(b) because the acts giving rise to the claims alleged herein has occurred, and continues to occur, in the Eastern District of California.

## PARTIES

### Plaintiffs

7.    Plaintiff, Teen Recuse, is a religious California corporation established pursuant to section 501(c)(3) of the Internal Revenue Code.  Part of its ministry is the establishment of a Christian boarding school as explained in detail below.

8.    Plaintiff, Carlton Williams, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, brings this complaint as a class action.  He is the custodial parent of a child who boards at, and is enrolled in, the school.

### Defendants

9.    Defendant, Xavier Becerra is now, and at all times mentioned herein, the Attorney General of California.  The Attorney General, by and through his

agents, has enforced and continues to enforce the law subject to constitutional challenge herein, the Community Care Facilities Act. The acts of the Attorney General and his agents as described herein were done under color of state law. General Becerra is sued in his official capacity.

10. Defendant, William Lightbourne is now, and at all times mentioned herein, the Director of the State Department of Social Services. The Director, by and through his agents, has enforced and continues to enforce the law subject to constitutional challenge herein, the Community Care Facilities Act. Under the Community Care Facilities Act the Director heads the State Department of Social Services. The Department sets standards and makes determinations regarding the applicability of the Community Care Facilities Act. The acts of the Director and his agents as described herein were done under color of state law. Director Lightbourne is sued in his official capacity.

11. Defendant, Butte County Department of Children's Services Division, through its employees, has acted as an agent for the co-Defendants, General Becerra and Director Lightbourne, to enforce the Community Care Facilities Act.

12. Plaintiffs are ignorant of the true names and capacities, whether governmental, individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is in some way responsible for or participated in, or contributed to, the matters and things complained of herein, and are legally responsible in some manner therefor. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Class Action Allegations**

13.    Plaintiff, Carlton Williams, brings this action for a class of persons defined as follows:

> All custodial parents and guardians of students currently enrolled and boarding at River View Christian Academy.

14.    These persons are collectively referred to as the Parent Class.

15.    The Parent Class satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party under Rule 23.

16.    **Numerosity:**  The proposed class consists of approximately 72 persons all of whom are custodial parents or guardians of students currently enrolled and residing at River View Christian Academy.

17.    **Ascertainability.**  Class members are readily identifiable from information in Plaintiff Teen Rescue's possession.

18.    **Typicality**.  Mr. Williams' claims are typical of the Parent Class in that each has a child currently enrolled and boarding at River View Christian Academy and ordinarily has done so after a site visit and review and execution of an identical contract.  (Exhibit 1).  The members of the proposed class have chosen to enroll their child at this religious private school because of the academic course of study, the structured environment, and the desire to inculcate in their children the moral standards and religious beliefs provided by River View Christian Academy.

19.    **Adequacy.**  Mr. Williams will fairly and adequately protect the interests of the proposed Class.  His interests do not conflict with Parent Class members' interests, and he has retained counsel experienced in successful class action litigation to vigorously prosecute this action on behalf of the Class.

20.    **Commonality.**  Mr. Williams and Parent Class members' claims raise predominantly common factual and legal questions that can be answered for all

Class members through a single class-wide proceeding.  For example, to resolve any Parent Class members' claims, it will be necessary to answer the following questions.  The answer to each of these questions will necessarily be the same for each class member.

      **a.** Whether the requirements of the Community Care Facilities Act relative to moral standards and religious practices can be imposed upon a religious boarding school when such stand as irreconcilable with the school's religious beliefs and practices;

      **b.** Whether a custodial parent or guardian has a parental right under the Fourteenth Amendment to send their child to a private religious boarding school in order to provide a desired inculcation of moral standards and religious beliefs and to further have their child exposed to a structured environment in order to improve their academic level;

      **c.** Whether a custodial parent or guardian has a parental right under the free exercise of religion clause of the First Amendment to send their child to a private religious boarding school in order to provide a desired academic course of study, a structured environment to encourage elements of proper social behavior necessary for good citizenship, and the desire to inculcate in their child the moral standards and religious beliefs provided by the religious institution.

21.     In addition to satisfying the prerequisites of Rule 23(a), Mr. Williams satisfies the requirements for maintaining a class action under Rule 23(b). Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to individual litigation.

22.     The members of the proposed class seek only equitable relief rather than damages.

1

2

## STATEMENT OF FACTS

### History of the River View Christian Academy

3    23.    River View Christian Academy is a Christian school that is one of the

4    ministries of Teen Rescue.  Started in 1993, the school ministry of Teen Rescue

5    was operated in southern California as Julian Christian High School dba Julian

6    Youth Academy until a wild fire (called the Cedar Fire) in southern California

7    destroyed the campus in 2003.  It moved to a 250-acre campus in northern

8    California and in 2012 took its current name.

9    24.    River View Christian Academy is financed through a combination of

10    tuition and donations from private nongovernmental sources.  All income is

11    through the private sector.  To be clear, River View Christian Academy does not

12    receive any money from federal, state, county or municipal sources.

### Courses of Instruction & Other Activities

14    25.    The courses of instruction at the River View Christian Academy

15    include Language Arts (English I-IV, American Literature, English Literature,

16    English 800); Science (Integrated Physics and Chemistry, General Science III,

17    Biology, Earth Science, Chemistry, Physics, Astronomy); Social Science (Civics,

18    World History, World Geography, American History, Government and Economics,

19    20th Century American History); Mathematics (Pre-Algebra, Algebra I-II,

20    Geometry, Pre-Calculus, Trigonometry, Consumer Math); Foreign Language

21    (Spanish I-III, French I-II); Electives (Personal Financial Literacy, College Planner,

22    High School Health, Careers in Nursing, Careers in Manufacturing, Digital Art,

23    Culinary, Dog Breeding, Music Appreciation, New Testament Survey, Old

24    Testament Survey).

25    26.    Plans are being made for the installation of greenhouses for the

26    inclusion of agricultural studies.

27    27.    The school has athletic teams.  Moreover, some students performed

28

volunteer work in community outreach with the recent fire.

28.    Students who academically qualify take courses for college credit.

29.    Each course integrates a Christian worldview into every subject.  For example, parts of the biology course will provide explanations based upon intelligent design rather than macro-evolution.  Instruction in an English course may involve the selection of a portion of scripture to dissect the grammar, structure, or literary elements of the text.

30.    Electives include religious instruction in Old and New Testament Survey.

## Campus

31.    River View Christian Academy sits on a 250-acre campus in Shasta County.  Upon entering the campus, the first image encountered is a prominent Latin cross.  (Exhibit 2).

32.    There are 30 buildings and full amenities for a school, including but not limited to, classrooms, library, cafeteria, basketball court, swimming pool, lake, baseball diamond, athletic field, library, dorms, administration building, rec room, and weight room.  (Exhibit 3).

33.    The cafeteria stands as the largest structure and is used for large assembly gatherings.  On the walls are various faith-based inspirational art and signs.

## Religious-Institution

34.    In addition to the integration of Christian thought into every subject, River View Christian Academy has a faith statement which reads:

What We Believe

1. The Bible is the only inspired, infallible, and authoritative Word of God (2 Tim. 3:16; 2 Pet. 1:21).

2. There is only one God, eternally existing in three persons: God the Father, God the Son, and God the Holy Spirit (Matt 28:19; John 15:26; I John 5:7).

3. We believe in the deity of our Lord Jesus Christ, in His virgin birth, His sinless life, His miracles, His vicarious and atoning death, His bodily resurrection, His ascension to the right hand of the Father, and in His personal future return to this earth (Matt 1:18-23; 16:16; 28:6-7; Heb 4:15; Luke 1:26-27; 8:22-25; John 2:11; 14:13; Isaiah 53:7; I John 2:1-2; I Cor. 15:3; Eph. 4:8-10; Rom. 8:3; Acts 1:1; Rev. 1:7).

4. A person is cleansed from sin only through genuine repentance and faith in the precious blood of Jesus Christ (Rom. 10:9-10; Acts 3:19).

5. The Holy Spirit dwells within the Christian, giving him/her sanctifying power to live a life glorifying to God (Gal. 5:16; Rom. 8:1-17).

6. Water baptism symbolizes to the world our identification with Christ (Rom. 6:3-4).

35.    River View Christian Academy is Christian but not affiliated with a denomination.  It holds orthodox doctrines and theologically conservative beliefs in the tradition of Evangelical-Protestantism.

36.    All River View Christian Academy staff are required to be Christians. However, students are not required to be Christians.

37.    Evangelical church services are provided on Sundays.  Bible studies are offered on Wednesdays.  Christian-based guidance and counsel is provided to students by volunteers who are pastors or mature Christians.

38.    Daily religious devotions appear from 8 to 8:30 each morning on the Monday through Friday schedule.

### Therapeutic Activities & Behavior Modification

39.    River View Christian Academy does not employ mental health professionals such as school psychologists, marriage and family counselors, psychiatrists, psychoanalysts, or social workers.

40.    Disruptive, negative, antisocial, or otherwise inappropriate conduct by students is not dealt with through therapy administered by mental health workers.

41.    River View Christian Academy is not a boot camp or wilderness camp. Staff do not employ corporal punishment to change behaviors. They do not seek to modify behaviors through withholding food or denying medical treatment to the sick or injured. They do not place students in solitary confinement.

42.    Instead, River View Christian Academy provides a combination of a structured environment and spiritual guidance.

43.    Concerning a structured environment, the school has schedule and rules of conduct for students that are similar to any public or private school. Disciplinary actions for violation of rules include removal of privileges, writing sentences, separation from other students when appropriate, (e.g., in cases such as threats of violence or fighting), detention, suspension, and expulsion. School discipline falls within the ordinary scope of what is administered in public and private secondary schools throughout California.

44.    As to the spiritual guidance, such is provided through opportunities to study the Bible, attending a church service at River View Christian Academy, prayer, pastoral counseling, or spiritual discussions with older mature Christians.

45.    Plaintiffs are informed and believe and thereon allege that the Attorney General and Director, through their agents, view the structured environment and spiritual guidance of River View Christian Academy as a "behavioral based service" as per Cal. Health & Safety Code § 1502(a)(19). *Behavioral based service* is not defined in the Health and Safety Code, but Plaintiffs are informed and believe and thereon allege that the term means *behavior modification*.

### Students

46.    River View Christian Academy's website has a tab which reads: "Does Your Teen Need Help?" The text under the tab states:

> It is often very difficult for parents to determine whether the struggles
> that their child are having are normal teenage struggles, or something

that they should be more concerned about. Many times what a struggling child needs most is to be in a structured and positive environment, removing them from the negative influences that are leading them down the wrong path. If your child is exhibiting these behaviors, or you are concerned about other students with these behaviors influencing your child, it could be a sign that they could be helped by a change to a more positive environment at RVCA.

47.    River View Christian Academy's website further explains symptoms that parents may notice in their teenage child which would indicate that River View Christian Academy may be a viable option. These include, rebelling against authority, disdain for the family, dabbling in drugs and alcohol, running away, stealing, among other behaviors that show that they are heading down a wrong path.

48.    Students are typically enrolled in River View Christian Academy for 18 months. The success rate is high. Follow up with the students shows that more than 90% of the students completing the full 18 months are successfully integrated back into public high schools, college, the work force, or the military.

49.    However, about 7% of students do not experience a change of heart and pick back up where they left off on travelling down a negative path which they carry into their 20s. This includes typical problems such as substance abuse, promiscuous and volatile relationships, unreliability in employment and the like.

50.    Although many students are enrolled at River View Christian Academy because they are troubled, some are enrolled because the structured environment is conducive to their unique academic and spiritual needs rather than any volitional shortcomings. Some students are enrolled because their parents see the environment at their child's local public high school as negative. The student is not troubled, but his or her parents believe River View Christian Academy provides the best academic and spiritual environment for their child to succeed.

51.    River View Christian Academy staff perform a detailed review of

applicants and will decline to enroll students who have severe psychiatric problems. Moreover, River View Christian Academy does not enroll students declared dependents of California's juvenile courts under Cal. Welfare & Institutions Code § 300 or those who have become wards of the court pursuant to Cal. Welfare & Institutions Code §§ 601 and 602.

### **Parents**

52.     The typical student enrolled in River View Christian Academy has not had success in the public school system.  Parents therefore are looking for a non-governmental option.

53.     Parents are fully informed that River View Christian Academy is Christian, that all staff are Christians, that courses are taught from a Christian worldview, and that students will be exposed to a Christian environment.  To ensure full disclosure, a 40-page contract is executed by a school official and a parent or guardian.  A parent-handbook is also provided in which the Christian nature of River View Christian Academy is explicitly set forth.  Unsurprisingly, parents or guardians ordinarily take a physical tour of the campus before signing the contract.

54.     Parents and guardians are not only fully informed about the spiritual, academic, and structured environment, they choose to enroll their children in River View Christian Academy because of those conditions.

55.     The parents' decision to send their children to River View Christian Academy is based upon their desire to inculcate the parents' moral standards, religious beliefs, and elements of good citizenship.

56.     The parents' decision to send their children to River View Christian Academy is rooted in their sincere, deeply held, religious convictions.

**Community Care Facilities Act**

57.     Until 2016, River View Christian Academy was exempt from licensure under the Community Care Facilities Act.   Under 22 CCR § 80007 community care facilities regulations do not apply to any school dormitory or similar facility under the conditions below:

 a. the school is registered/certified by the California State Department of Education by filing an annual private school affidavit;

 b. the school and dormitory are on the same grounds;

 c. children are six years old or older;

 d. the program operates only during normal school terms unless the academic program runs year-round;

 e. the school's function is educational only;

 f. the school program is not designated as providing rehabilitative or treatment services;

 g. the school's function does not promote intent to provide community care services, and the facility does not accept children who are in need of such services, including but not limited to children with developmental disabilities, mental disorders or physical handicaps; juveniles declared dependents of the court under Welfare and Institutions Code section 300, and juveniles declared wards of the court under Welfare and Institutions Code sections 601 and 602;

 h. the facility does not receive public funds for care including but not limited to Federal Aid to Families with Dependent Children –Foster Care and Supplemental Social Income/State Supplementary Payment; and,

 i. no public or private agency, including but not limited to county welfare department and probation offices, provides social services to children in the facility.

58.     The Community Care Facilities Act was amended in 2016 by Senate Bill 524.  The Bill changes the definition of *private alternative boarding school* to mean "a group home licensed by the [D]epartment [of Social Services] to operate a program…to provide youth with 24-hour residential care and supervision, which, in addition to providing educational services to youth, provides, or holds itself out as

providing, behavioral-based services to youth with social, emotional, or behavioral issues." Cal. Health & Safety Code CCR § 1502(a)(19).

59.     The regulations related to the Community Care Facilities Act place restrictions on schools relative to religion. Specifically, students are to be "free to attend religious services or activities of his/her choice and to have visits from the spiritual advisor of his/her choice." See, 22 CCR § 80072

60.     The Community Care Facilities Act and the accompanying regulations are irreconcilable with a religious school.

61.     Violation of the Community Care Facilities Act criminalizes as a misdemeanor any willful or repeated violation of any of its rules or regulations. The penalty is a $1,000 fine and/or imprisonment in the county jail for up to 180 days. Cal. Health & Safety Code § 1540.

62.     The religious practices of River View Christian Academy violate portions of the Community Care Facilities Act.

63.     This regulation poses an existential threat to religious schools such as River View Christian Academy. River View Christian Academy only allows spiritual advisors who by profession and conduct adhere to the faith statement. Additionally, River View Christian Academy only provides Christian Bible studies and Christian church services. It intentionally excludes spiritual rituals, counsel, totems, services, and practices inconsistent with the Christian faith.

64.     The Parent Class specifically sends their children to River View Christian Academy because of the spiritual guidance provided.

65.     Thus, it would be a profound interference with the free exercise of religion of both River View Christian Academy and the Parent Class to place River View Christian Academy under the Community Care Facilities Act.

66.     The Community Care Facilities Act addresses moral issues in a manner that is inconsistent with the religious beliefs and practices of River View Christian

Academy.  The Community Care Facilities Act gives students the right "[t]o be free from acts that seek to change his or her sexual orientation, including efforts to change his or her gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex." Cal. Health & Safety Code § 1502.2(d)(1)(P).   River View Christian Academy holds the religious convictions that sexual activities are proper only between a man and a woman who are married to each other.   Moreover, River View Christian Academy does not allow any sexual or romantic encounters or entanglements between students of any kind.  That stands as a universal rule and applies between boys and girls, boys and boys, and girls and girls.  In addition to the religious basis for the rule, River View Christian Academy has this rule in order to prevent distractions to academic endeavors by the students.

67.     In view of the rights of students to sexual autonomy related to sexual orientation under the Community Care Facilities Act, a private alternative boarding school must "submit a staff training plan to the department [of Social Services] as part of its plan of operation" to include the rights of youth in the area of "[c]ultural competency and sensitivity in issues relating to the lesbian, gay, bisexual, and transgender communities."  Cal. Health & Safety Code § 1502.2(c)(4).   In that River View Christian Academy holds a theologically conservative position on sexual ethics described above, Teen Rescue is informed and believes and thereon alleges that it is impossible for it to propose a plan consistent with its religious beliefs and practices that the State of California will approve.

68.     Because of this, neither the Attorney General nor the Director can bring River View Christian Academy under the Community Care Facilities Act as written and remain consistent with the religion clause of the First Amendment.

69.     The enforcement of the Community Care Facilities Act by the Defendants against the school ministry of Teen Rescue is done under color of law.

**Search Warrants And Investigations**

70.     On February 1, 2011, officials from the California Community Care Licensing alleged that a complaint was submitted that Julian Youth Academy (the school's prior name) was operating an unlicensed group home.  On December 9, 2011, four licensing program analysts, a licensing program manager and an Investigation's Bureau investigator made an unannounced visit to River View Christian Academy with a search warrant.  The purpose of the visit was for California Community Care Licensing to perform an onsite investigation in response to the allegation of an unlicensed group home.  Interviews of staff and a review of records were made and photographs taken.   As to the latter, a comment was made by one of the investigators to the other investigators not to take photographs of the library as this would make River View Christian Academy look like a school.  On November 14, 2012, a further site visit was conducted with a Licensing Program Manager and a program Administrator.  At that time they conducted five interviews of employees and five interviews of students which state officials falsely referred to as "clients."  More than two years passed since the alleged complaint was submitted before a letter from the Department of Social Services was dispatched to the school.  The letter read in pertinent part, "I am writing to you in reference to the complaint our department received on February 1, 2011.  We have completed our investigation and determined the allegation to be unfounded."

71.     On March 2, 2015, an official from the California Community Care Licensing again appeared at River View Christian Academy and alleged that a complaint was submitted that the school was operating an unlicensed group home. This appearance was unannounced. The Licensing Program Manager was not admitted to the campus by River View Christian Academy.   The official reviewed the River View Christian Academy website and issued a report that the language in

the website which states that the school program is designed for "struggling teenagers in need of full-time supervision and redirection" indicates that the "web site does not clearly meet the intention of the regulations."  The findings were noted as "inconclusive."

72.    Since the Community Care Facilities Act was amended in 2016, the Plaintiffs are informed and believe and thereon allege that the California Department of Social Services asserts that River View Christian Academy falls within the definition of *private alternative boarding school* and thus is subject to the Community Care Facilities Act, the jurisdiction of the California Department of Social Services, and is enforced by the California Attorney General.  This allegation rests upon a warrant, dated January 8, served at the campus of River View Christian Academy.  (Exhibit 4).  The warrant was by application of the Community Care Licensing Division of the California Department of Social Services in which the Attorney General and his deputies provided legal representation before the Superior Court of California, in and for the County of Shasta.

73.    The warrant provided for the physical inspection of the grounds, interviews of staff, leadership, volunteers, clients/children/ residents and "any other potential witness" along with the collection, inspection and review of documents related to matters enumerated in the Community Care Facilities Act.  This includes, records related to the following:

      a.  staff meetings on behavioral interventions;
      b.  records or evidence that shows that…RVCA operates as a community care facility;
      c.  monitoring of food intake;
      d.  behavioral based services;
      e.  rehabilitative or treatment services;
      f.  conversion or other therapy for social, emotional, or behavioral issues;

1
2
3
4

    g.  the acceptance of children with developmental disabilities, mental disorders or physical handicaps;

    h.  the acceptance of juveniles declared dependents of the court under Welfare & Institutions Code § 300 and juveniles declared wards of the court under Welfare & Institutions Code §§ 601 and 602 (See Cal. Code of Regs., tit., § 80007(a).) (Citations in original).

5
6
7
8
9
10

    74.    The search of the campus involved 17 investigators accompanied by 16 uniformed and armed members of the California Highway Patrol with two attack dogs.  Before the unannounced swarm of the school campus, members of the community reported to employees of River View Christian Academy that they observed this force gather at a staging area in a nearby town and drive as a convoy to the targeted area.

11
12
13
14
15
16
17
18

    75.    Plaintiffs are informed and believe and thereon allege that the 17 investigators were employed or contracted by the California State Department of Social Services, under the direction of Director Lightbourne and his agents, and the California Department of Justice, under the direction of General Becerra and his agents.  Plaintiffs are further informed and believe and thereon allege that the investigators also included employees of Butte County Department of Children's Services Division.  Said employees acted as agents of Director Lightbourne and General Becerra in order to enforce the Community Care Facilities Act.

19
20

    76.    Upon arrival, they spread out and began searching the buildings, scanning, and in some instances, removing and confiscating school papers.

21
22
23
24
25
26
27

    77.    Investigators sought to interrogate employees and students.  Because of the warrant and the potential criminal liability related to the Community Care Facilities Act, counsel for Teen Rescue advised the staff not to speak to investigators.  No instructions were given to students to not speak with investigators.  Some students spoke with investigators and some refused.  Based on subsequent discussions between staff and students, Plaintiffs are informed and believe and thereon allege that investigators coerced students to speak to them by

28

deception.  Investigators threatened students that if they did not answer questions the students would be taken.

78.     The Teen Rescue director challenged the warrant because there were hand-written changes on the document.  This stopped the search and questioning for a short period of time.  After making telephone calls, the search resumed.  Although the warrant was open from January 8 to February 2, the investigators and Highway Patrolmen left after just five hours.

79.     Because of the amendment to the Community Care Facilities Act, the Defendants assert jurisdiction over River View Christian Academy and seek to compel compliance with the Act.  As explained in this Complaint, bringing a theologically conservative school such as River View Christian Academy within the Community Care Facilities Act and the Act's regulations would violate the free exercise rights of both the religious institution and the Parent Class.  Further, it would interfere with the parental rights of the Parent Class.

### FIRST CAUSE OF ACTION:
### Violation of The Free Exercise of Religion
*All Plaintiffs Against All Defendants*
### (42 U.S.C. § 1983)

80.     River View Christian Academy and the Class Representative, Mr. Williams, hereby incorporate the foregoing paragraphs as though fully set forth herein.

81.     The Community Care Facility Act and its supporting regulations impose requirements on River View Christian Academy regarding student autonomy in religion and sexual identity.  In view of the latter, the law requires River View Christian Academy to submit a plan for training in cultural competency and sensitivity in issues relating to the lesbian, gay, bisexual, and transgender communities.   The law further imposes restrictions on the use of "behavioral-based

services to youth with social, emotional, or behavioral issues."

82. Compliance with the Community Care Facility Act will violate the sincerely held religious convictions and practices of this Christian ministry. The Community Care Facility Act has no religious exemption.

83. Requiring River View Christian Academy to comply with the scope of Community Care Facility Act and thus fall under the enforcement jurisdiction of the Attorney General and the Director of the State Department of Social Services will violate this religious educational institution's rights to the free exercise of religion as protected by the First Amendment.

84. Enforcement of the Community Care Facility Act is done under color of state law and exposes Teen Rescue and its employees to criminal liability for exercising their religion.

<u>**SECOND CAUSE OF ACTION:**</u>
<u>**Violation of Parental Rights Under the First & Fourteenth Amendments**</u>
<u>***Parent Class Against All Defendants***</u>
<u>**(42 U.S.C. § 1983)**</u>

85. The Class Representative, Mr. Williams, hereby incorporates the foregoing paragraphs as though fully set forth herein.

86. The rights of the parents to direct the education and the inculcation of moral standards, religious beliefs, and elements of good citizenship are protected under the liberties guaranteed by the Fourteenth Amendment.

87. Moreover, the rights of the parents to direct the education and the inculcation of moral standards, religious beliefs, and elements of good citizenship are entwined with the free exercise of religious rights of the Parent Class.

88. By bringing River View Christian Academy under the Community Care Facility Act, California substitutes its judgment with that of the parents on

matters of religion and moral issues.

89.     The Community Care Facility Act forces residential educational programs into group home and foster care-type licensing structure.  As such, the Parent Class is not afforded an exclusively faith-based residential educational option.

90.     Additionally, enrolling their children in a school that is regulated and under the jurisdiction of the California Department of Social Services is not tenable for the Parent Class.  The California Department of Social Services is the guardian of a dysfunctional and dangerous network of group homes and foster care providers.  For example, the group home and foster care system in California is responsible for over 40% of recruitment of minors into sex trafficking in the State.  Further, 28% of children in California foster care are abused in some fashion.  Nearly half of the children never finish high school and 66% are arrested, homeless, or dead one year after leaving foster care.  The Parent Class stands appalled by the prospect of putting their children under the jurisdiction of this state entity in charge of the licensing, regulation, and monitoring of this failed and disreputable system.

91.     What is more, the Parent Class does not wish to have California countermand parents on what religious exercise and beliefs they want for their children by requiring, under threat of criminal sanctions, that River View Christian Academy defer to the wishes of individual students on religious practices on the campus.

92.     Bringing this religious school under the jurisdiction of the Department of Social Services in order to enforce the religious and sexual orientation requirements of the Community Care Facility Act violates the parental rights of the Parent Class.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray that the Court grant:

1.      An order declaring that the Community Care Facilities Act is unconstitutional under the religion clause of the First Amendment on its face and as applied to River View Christian Academy;

2.      An order declaring that application of the Community Care Facilities Act to River View Christian Academy unconstitutionally interferes with the free exercise of religion rights and the parental rights of the Parent Class;

3.      An order permanently enjoining Defendants, and their agents, from enforcing the Community Care Facilities Act against Teen Rescue's school ministry operated through the River View Christian Academy;

4.      An order declaring the respective rights and duties of the parties relative to the jurisdiction and enforcement powers of the Director of the California Department of Social Services and the Attorney General under the authority of the Community Care Facilities Act over Teen Rescue's school ministry, River View Christian Academy;

5.      All relief of whatever kind available under FRCP 56;

7.      Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) and other applicable statutes;

8.      Costs incurred as a result of Defendants' actions and this lawsuit; and,

9.      Other and further relief as the Court deems just and proper.

Dated:  March 13, 2019

/s/ Kevin T. Snider
Kevin T. Snider
*Counsel of Record*

Complaint

Matthew B. McReynolds

Attorneys for the Plaintiffs
Teen Rescue and Carlton Williams

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

/s/ Kevin T. Snider
Kevin T. Snider
*Counsel of Record*
Matthew B. McReynolds

Attorneys for the Plaintiffs