XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ISMAEL A. CASTRO, State Bar No. 85452
Supervising Deputy Attorney General
JUDY WONG, State Bar No. 299990
LAURIE N. ADAMSON, State Bar No. 242795
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6095
 Fax: (916) 324-5567
 E-mail: Laurie.Adamson@doj.ca.gov
*Attorneys for Xavier Becerra, Attorney General of California, and Pat Leary, Acting Director of California Department of Social Services*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TEEN RESCUE, CARLTON WILLIAMS as an individual and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, Attorney General of the State of California, in his official capacity, WILLIAM LIGHTBOURNE, Director of the State Department of Social Services, in his official capacity, Butte County Department of Children's Services Division ad DOES 1-50,**<br><br>Defendants. | 2:19-cv-00457-JAM-EFB<br><br>**DECLARATION OF DARIN HIEB SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Dept:  6, 14th floor<br>Judge:  Honorable John A. Mendez<br>Trial Date:  None Set<br>Action Filed:  March 13, 2019 |

I, Darin Hieb, declare that the following is true and correct:

1. I am employed by California Department of Social Services, Community Care Licensing Division (CCLD), located at 9835 Goethe Road, Suite 200, Sacramento, CA. 95827. I have been employed with California Department of Social Services since June 2015. I am currently assigned to the Investigations Branch, Northern Region, and my job title is Investigator.

1

1 | The facts set forth herein are within my personal knowledge, to which I could and would testify competently if called upon to do so.

2. As an Investigator, I have completed a course on Peace Officer Standards Training (POST) and am a certified peace officer. I am familiar with the provisions of the California Health and Safety Code and Title 22 of the California Code of Regulations governing the licensing and operation of children's residential facilities such as foster homes and group homes for children. I have completed numerous additional hours of training related to CDSS licensing requirements and investigations.

3. My job duties as an Investigator include, but are not limited to conducting investigations of physical abuse, sexual abuse, questionable death, lack of care and supervision, other serious violations, and unlicensed care in community care facilities. I have conducted dozens of investigations related to serious incidents and complaints in children's residential facilities and other licensed facilities.

4. I am familiar with NEW DAY FOR CHILDREN, INC. (New Day) and TEEN RESCUE, INC. DBA RIVER VIEW CHRISTIAN ACADEMY (RVCA) because on September 25, 2018, I was given an assignment to complete investigative tasks regarding an allegation of unlicensed care at New Day and Teen Rescue dba RVCA, located at 12069 Tintagel Lane, Whitmore, Shasta County, CA 96096, APN: 034-270-001.

5. On October 2, 2018, conducted pre-text phone calls to RVCA staff, "Debbie." I stated that I was interested in enrolling my 17-year old daughter, Jessica, who was "out of control," at RVCA. Debbie connected me with Christine Fortkamp in the admissions department. Ms. Fortkamp called me and asked for background information about Jessica. I stated that Jessica was 17, has depression, and has not been going to school or doing her homework, and that I recently became aware that she was having a sexual relationship with another female. Ms. Fortkamp stated that there would be issues with accepting a client who was gay due to the possibility of inappropriate interactions with other youth, but some rebellious homosexual behaviors would be acceptable and that any homosexual acts are not allowed. She also stated they do not accept youth with sexual deviancy.

6. Ms. Fortkamp further stated that although RVCA does not do any counseling or behavior therapy because they are not legally a therapeutic boarding school, they have life skills classes for emotional healing, boundaries, online safety, and other life skills. Staff keep medication locked and distribute medication to the children, and that the only type of medication that is not accepted at RVCA is Prozac. She described how RVCA restricts and controls communication with parents. She also described a level system for behavior management with 12 categories to gain or lose points in a day based on a child's behavior, and that punishment included "lines" which was writing a sentence repeatedly that usually took half a day, and not being allowed to participate socially until the lines were finished.

7. Ms. Fortkamp stated that they cannot be a therapeutic boarding school legally but that they deal with youth who are at risk. If the child needs a professional, they network with locations and professionals in the community. They have a staff member who is working on an internship to be a therapist who works Monday through Friday with the children to provide "mentoring services."

8. On November 27, 2018, CDSS Licensing Program Manager Daniel Allmon, Investigators Laura Carter-Cook and Darin Hieb, and Supervising Special Investigator Melisa Vega met with representatives from California Highway Patrol (CHP), Sergeant Craig Burson and Investigator Chris Partlow. Due to CDSS' safety concerns, CHP informed CDSS that they would request a Shasta County Sheriff's Office deputy to assist with the service of the warrant, and that CHP would be on stand-by to conduct a prospective sweep of the grounds, locate and secure any weapons and gun safes, and have an officer stand-by each gun safe to ensure weapons are not accessed while CDSS carries out the inspection. CHP requested that inspection warrant specifically include language that allows CHP and/or other law enforcement agencies to assist with its execution.

9. On January 8, 2019, I accompanied Deputy Attorneys General Judy Wong and Laurie Adamson to Shasta Superior Court, to apply for an inspection warrant, in Case No. 191281. Judge Stephen H. Baker issued the inspection warrant to CDSS, to be executed between January 18, 2019 and February 1, 2019.

3

10. On January 18, 2019, I participated in an unlicensed care investigation on the campus of RVCA. Due to the repeated refusal of RVCA to allow CDSS to conduct complaint investigation interviews of staff or youth, entry on to campus was obtained via the inspection warrant obtained by CDSS. As a result of CDSS' safety concerns, California Highway Patrol assisted CDSS with the service of the warrant, a prospective sweep of the grounds, locating and securing any weapons and gun safes if found, and remained on stand-by to ensure weapons were not accessed while CDSS carried out the inspection.

11. During the January 18, 2019 inspection, I interviewed several youths placed at RVCA. At the beginning of each youth interview I introduced myself, stated the purpose of my visit, and asked if the youth would like to speak to me. I emphasized to each youth that they did not have to speak to me and could refuse to answer any question. All youth interviewed agreed to speak to me. CDSS also attempted to interview RVCA staff to get their perspective, confirm youth statements and to gather additional information regarding the program, however, they refused to speak to us. When CDSS asked staff why they would not participate in interviews with us, we were told that Phil Ludwig directed all RVCA staff to refuse to speak to us.

12. All youth interviewed made detailed and consistent statements to me that showed RVCA provides "care and supervision" that requires them to be licensed pursuant to Health and Safety Code §1503.5, and the facility accepts or retains residents who demonstrate the need for "care or supervision," as that term is defined in California Code of Regulations, title 22, Division 6, section 80001, subdivision (c)(3). Youth statements showed that RVCA is not exempt from licensure because it does not meet the requirements of California Code of Regulations, title 22, section 80007, subdivision (a), namely, the school's function is not educational only, the program is designated as providing rehabilitative or treatment services, the facility accepts children who are in need of community care facility services, and a public agency probation department provides social services to children in the facility, as follows.

13. My interviews of youth on January 18, 2019 confirmed that RVCA provides care and supervision as defined in California Code of Regulations, title 22, sections 80001, subdivisions (c)(3)(B)-(H). All youth reported to me that RVCA staff provides direct care and

4

supervision to youth at all times, including overnight, and directs all youth activities. Youth described detailed house rules, and their daily schedules and activities that included school, meals, physical activities and other routine activities, and that all youth are on a behavioral system and monitored throughout the day for points. Youth reported there is never a time when staff are not supervising except inside the shower stalls, and that at night staff monitor the youth through a video feed and hourly room checks. Youth reported to me that RVCA also controls youth's ability to talk to or even look at peers, and that there are "restricted communication" or "RC" times throughout the day. Youth reported to me that all types of communications with their parents are restricted and monitored. All youth reported that RVCA centrally stores medications, including youths' psychotropic medications like Zoloft, Clonidine, Lexapro and Seroquel, and that RVCA distributes medications to the youth and keeps a daily medication log. Youth reported to me that RVCA arranges and assists with transportation to medical and dental care. The youth told me that RVCA takes, stores and maintains a portion of their property upon admission, and that they are not allowed to keep a portion of their personal items. Youth reported to me that RVCA plans, schedules and monitors meals and has placed youth on peanut butter and bread-only diets for many months at a time, as recently as October 2018. Youths' ability to access a phone is limited and youth reported that they would be unable to call 9-1-1 or the authorities if needed

14. Youth statements showed that the school's function is not educational only, as required by California Code of Regulations, title 22, Division 6, section 80007, subdivision (a)(6)(E). Many youth reported that the school's focus is behavior and not education, and many of the youth reported being placed at RVCA for behavioral reasons. Youth reported that "school" is independent study online, and they must sit quietly in front of a computer during school hours to do the independent study. Youth reported there are no teachers teaching "school." Several youths reported struggling with school work but stated there is often no RVCA staff to help them and those who try to help are unprepared and lack the necessary knowledge to assist properly. One youth reported it is "not really school" and that you do not get appropriate materials for the assignments, and that for example, in science you are supposed to do experiments but since there are no materials and no teacher, you have to "guess" the answers. Youth stated that although [in

5

addition to the monthly fee their parents pay] their parents can pay an extra fee for an outside tutor who comes for 1 hour per week, several had requested a tutor and had not received any tutoring. Youth also provided detailed descriptions of RVCA's behavior modification or "levels" system, where throughout the day youth earn or lose points based on behavior. Youth receive a daily evaluation sheet with points gained or lost based on behavior, not academics. Youth reported that the only actual "classes" provided on campus by a real person are for emotional health, anger management or boundaries. In addition, more than one youth reported that they were not allowed to attend "school" when they misbehaved.

15. Youth statements to me also showed the program is designated as providing rehabilitative or treatment services and that the facility accepts children who are in need of community care facility services, in violation of California Code of Regulations, title 22, Division 6, section 80007, subdivisions (a)(6)(F) and (G). Youth provided me with detailed descriptions of RVCA's program as a behavior modification or "levels" system, where throughout the day youth earn or lose points based on behavior. Youth receive a daily evaluation sheet with points gained or lost based on behavior. Youth reported there is someone named "Ms. Leann" and "Ms. Posey" that lectures them or provides individual counseling on mental health issues on campus. Several youth reported to me that they had histories of mental health issues, that RVCA was aware and that they were on psychotropic medications. Youth reported receiving therapy from counselors both on campus and off campus. Youth also reported to me that when they had been placed at RVCA it was for drug or alcohol addiction, however, they did not disclose any treatment they had received from RVCA for the addictions. Youth reported that while there are a few religious components to the program, such as having their Bible open during "devotional time," youth are not required to read the Bible. No youth reported that the focus of the program is religious. Youth reported that RVCA does not have a church on campus and they do not attend actual "church," but rather, RVCA offers "religious videos" that the youth can watch to get behavior points.

16. Of concern to CDSS is that youth statements also showed that youth's rights are likely being violated and that RVCA's staff engage in conduct that is a risk to the health, welfare,

or safety of youth in care, which is the type of conduct that CDSS is mandated to monitor and prevent in community care facilities. *See* Health and Safety Code section 1558(c). The evidence gathered warrants immediate action by CDSS and the youth's health, safety and welfare would be at significant risk of harm if CDSS was prohibited or restrained from pursuing an unlicensed care action and requiring RVCA to obtain a license. Namely, several youths in care reported to me past and current suicidal thoughts for which they were not receiving any treatment. More than one youth stated that when they had reported to RVCA staff they wanted to kill themselves, the youth were denied access to a counselor because they had not "earned [behavior] level C." Another youth reported feeling "trapped" and that no one is listening to him, and that he needs a counselor. Another youth reported being refused any counseling or support besides prayer. Several youths reported that if they make "poor behavior choices" RVCA has placed them on a restricted diet of two slices of bread with peanut butter inside, and two youth reported being placed on this peanut butter and bread diet for 6 or 7 months straight as recently as October 2018. Youth reported to me their shoes are locked up when not in use so that they cannot run away. Youth reported that if they run away from campus RVCA confiscates their shoes and gives them flip flops (open toe rubber sandals), and I personally observed one youth wearing flip flops and socks on a very cold day in January, because his shoes had been confiscated by RVCA. At least one youth reported to me being forced to go outside at night in the cold and wait there up to 30 minutes for misbehavior. It should be noted that the campus is located in the foothills or mountains of Northern California's Shasta County, and at night temperatures can be at or near freezing. All youth reported that all types of communications with their parents are restricted and supervised, RVCA reads all youth mail to and from their parents, and at least one youth reported that he was required to "re-write" a letter to his parent because RVCA did not like the content. Youth told me they do not have unsupervised access to a phone and reported they would not be able to make a private call to 9-1-1 or the authorities if needed due to an emergency or abuse. Youth reported that they have had RVCA "take away school" for misbehavior.

17.   Based on the complaint investigation and my review of the investigation evidence collected to date, it is my opinion that Teen Rescue, Inc. and FACESS aka Teen Triumph, are

7

operating unlicensed community care facilities that provide or hold themselves out as providing care and supervision, a treatment and rehabilitation program for at-risk youth behaviors and a history of mental health conditions, drug or alcohol addictions, being sex-trafficked, medication management, assistance with obtaining and transportation to medical and dental care, therapeutic counseling group classes on behavior issues and a strict behavior modification program, and that the population they serve is at-risk youth.

18. Based on the complaint investigation, the evidence CDSS gathered following the execution of the inspection warrant, and all other information gathered to date, it is my opinion that pursuant to California Health and Safety Code sections 1502(a), 1503.5 and 1508, and California Code of Regulations, title Division 6, section 80006, subdivision (c), CDSS was required to investigate Teen Rescue, Inc. provides to see whether they are operating an unlicensed community care facility. Furthermore, based on the findings from the investigation, CDSS' actions in issuing Notices of Operation in Violation of Law were necessary and justified in order to protect the health, safety and well-being of vulnerable youth in care, pursuant to the CDSS' mandates at California Health and Safety Code sections 1540, 1540.1, 1541, 1543 and 1547.

I certify under penalty of perjury under state and federal laws that the foregoing is true and correct.

Dated: April 9, 2019 and signed at the CDSS Office, 9835 Goethe Road, Suite 200, Sacramento, CA

_Darin Hieb, CDSS Investigator_

SA2019101170
13621102.docx