UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEEN RESCUE, CARLTON WILLIAMS as an individual and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>XAVIER BECERRA, Attorney General of the State of California, in his official capacity, WILLIAM LIGHTBOURNE, Director of the State Department of Social Services, in his official capacity, Butte County Department of Children's Services Division and DOES 1-50,<br><br>                    Defendants. | No.  2:19-cv-00457-JAM-EFB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

     This case stems from a dispute concerning the California

Community Care Facilities Act ("CCFA") and its implications on

the freedom of religion and the rights of parents to raise their

kids in the way they see fit.  Plaintiff Carlton Williams

("Plaintiff") brings this suit in his capacity as class

representative of the parents and guardians of the students

currently attending River View Christian Academy ("RVCA") and

1

seeks declaratory and injunctive relief.  First Amended Comp.

("FAC"), ECF No. 8.  Defendants move to dismiss.  Mot., ECF No.

24.

For the reasons set forth below, the Court GRANTS

Defendants' motion.[1]


I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Teen Rescue is a California-based religious organization.

FAC ¶ 7.  As part of its ministry, Teen Rescue established and

operates a Christian boarding school, River View Christian

Academy.  FAC ¶¶ 7, 23.  Plaintiff Carlton Williams is the

custodial parent of a child enrolled at RVCA.  FAC ¶ 8.  Williams

is the representative for a class of similarly situated parents

and guardians of RVCA students ("Parent Class").  FAC ¶ 8.

The CCFA was enacted with the primary purpose of

establishing "a coordinated and comprehensive statewide service

system of quality community care for mentally ill,

developmentally and physically disabled, and children and adults

who require care or services by a facility or organization issued

a license or special permit."  Cal. Health & Safety Code

§ 1501(a).  Until 2016, RVCA was exempt from licensure as a

community care facility and thereby exempt from the CCFA's

regulations.  FAC ¶ 57.  When the CCFA was amended in 2016 by

Senate Bill 524, the legislature changed the definition of

private alternative boarding school to mean "a group home

---

[1] This motion was determined to be suitable for decision without
oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
scheduled for July 30, 2019.

licensed by the [D]epartment [of Social Services] to operate a
program . . . to provide youth with 24-hour residential care and
supervision, which, in addition to providing educational services
to youth, provides, or holds itself out as providing, behavior-
based services to youth with social, emotional, or behavior
issues." Cal. Health & Safety Code § 1502(A)(19). FAC ¶ 58.
Thus, since 2016, the California Department of Social Services
has categorized RVCA as a private alternative boarding school,
subject to the CCFA, the jurisdiction of the California
Department of Social Services, and enforcement by the California
Attorney General. FAC ¶¶ 45, 72. Teen Rescue disputes this
categorization, alleging it does not provide therapeutic
activities or engage in behavior modification other than
providing students with a combination of a structured environment
and spiritual guidance. FAC ¶¶ 39, 42.

RVCA also alleges the CCFA impermissibly requires private
alternative boarding schools to allow students full autonomy on
matters of religion and sexual identity. FAC ¶ 1. RVCA admits
that its religious practices violate those portions of the CCFA.
FAC ¶ 62. Williams alleges he specifically sends his child to
RVCA for the spiritual guidance it provides. FAC ¶ 64. Thus,
Williams alleges it would be a profound interference with the
Parent Class' free exercise of religion and parental rights to
place RVCA under the CCFA. FAC ¶¶ 65, 80.

On March 13, 2019, Plaintiffs Carlton Williams and Teen
Rescue filed the Complaint. Compl., ECF No. 1. Less than one
month later, Plaintiffs filed the operative First Amended
Complaint, alleging violations of (1) the First Amendment's Free

Exercise Clause, and (2) the Fourteenth Amendment's right to parent.  FAC, ECF No. 8.

On April 5, 2019, Plaintiffs filed an Emergency Application and Motion for a Temporary Restraining Order.  ECF No. 10.  This Court denied Plaintiffs' motion and dismissed Teen Rescue's claim with prejudice based on Younger abstention, leaving Carlton Williams as the sole plaintiff.  TRO Order, ECF No. 21, at 5.

Defendants now move to dismiss the FAC, arguing Plaintiff lacks standing and failed to state a cognizable claim under either the First or Fourteenth Amendment.  Mot., ECF No. 24.  Williams opposes the motion.  Opp'n, ECF No. 36.

## II.  OPINION

### A.  Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  Standing is therefore a "threshold question" in "determining the power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Moreover, "federal courts are required sua sponte to examine jurisdictional issues such as standing."  Bernhardt v. Cty. of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks and citation omitted).

To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).  At the

pleading stage "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth, 422 U.S. at 518.

For Williams to have standing, he must first establish an injury in fact. To do so, Williams must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S., at 560-61. A concrete injury as to the plaintiff must actually exist. Spokeo, 136 S. Ct., at 1548 (citations omitted). An "[a]bstract injury is not enough." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and . . . ." As previously mentioned, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. at 101-02 (internal quotation marks and citations omitted). Moreover, to be particularized, the injury "must affect the plaintiff in a personal and individual way." Id. (internal quotation marks and citations omitted). The injury in fact test "requires that the party seeking review be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972).

1.   The Free Exercise Claim

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amdt. 1.  Above all, this affords us the "right to

5

believe and profess whatever religious doctrine one desires." *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990). Thus, the government may not "[1] compel affirmation of religious beliefs, [2] punish the expression of religious doctrines it believes to be false, [3] impose special disabilities on the basis of religious views or religious status, or [4] lend its power to one side or the other in controversies over religious authorities or dogma." *Id.* (internal citations omitted).

The CCFA requires, among other things, RVCA to "submit a staff training plan to the [D]epartment [of Social Services] as part of its plan of operation" which includes training in "[c]ultural competency and sensitivity in issues relating to the lesbian, gay, bisexual, and transgender communities." Cal. Health & Safety Code § 1502.2(c)(4). The CCFA also gives students the right "[t]o be free from acts that seek to change his or her sexual orientation . . . ." Cal. Health & Safety Code § 1502.2(d)(1)(P). Neither of these provisions of the CCFA constitute an invasion of Williams' First Amendment rights sufficient to establish the requisite standing.

Merely developing a plan to train RVCA staff in issues relating to the lesbian, gay, bisexual, and transgender communities does not invade the First Amendment rights of RVCA parents. An injury in fact must be particularized: it must affect the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct., at 1548. The training plan is developed to educate RVCA staff. The RVCA staff is not, however, required to teach students about these issues. As such, this provision of the CCFA

does not affect Williams' child, let alone Williams himself, in a personal and individual way.

Similarly, preventing a community care facility from attempting to change the sexual orientation of its students is not an invasion of the parents' First Amendment rights. The First Amendment gives Williams the right to believe and profess whatever religion he desires. If sending his child to an exclusively faith-based educational institution is an important part of Williams' faith, there is nothing in the CCFA that prevents him from doing so. The provision in the CCFA that bars conversion therapy applies only to facilities that are subject to the CCFA. Williams is free to enroll his child at a CCFA-exempt religious boarding school. Given that nothing in the CCFA prevents Williams from enrolling his child in a religious boarding school that could attempt to change his child's sexual orientation, any invasion of his First Amendment rights is too abstract to amount to an "injury in fact." Lujan, 504 U.S., at 560-61.

Finally, the very language of the FAC is revealing as to whose injury is really at stake. The First Cause of Action states: "Compliance with the [CCFA] will violate the sincerely held religious convictions and practices of *this Christian ministry*.". FAC ¶ 93 (emphasis added). It continues: "Requiring [RVCA] to comply with the scope of the [CCFA] and thus fall under the enforcement jurisdiction of the Attorney General and the Director of the State Department of Social Services will violate *this religious educational institution's* right to the free exercise of religion as protected by the First Amendment." FAC

1   ¶ 94 (emphasis added).  In framing the injuries alleged as being

2   sustained by "this Christian ministry" and "this religious

3   educational institution," the FAC leaves no doubt that the only

4   injuries alleged here were suffered by Teen Rescue, not the

5   parents.  Williams failed to identify a concrete and

6   particularized injury in fact under the Free Exercise Clause.

7   Thus, Williams and the other RVCA parents lack standing to bring

8   a claim under the First Amendment.  The Court DISMISSES this

9   claim WITHOUT PREJUDICE.

10                  2.    The Parental Rights Claim

11       Among the protections afforded by the Fourteenth Amendment

12  is the "liberty of parents and guardians to direct the upbringing

13  and education of children under their control."  Pierce v.

14  Society of the Sisters of the Holy Names of Jesus and Mary, 268

15  U.S. 510, 534-35 (1925) (invalidating a statute that would remove

16  the option to send children to private school); see also Meyer v.

17  State of Nebraska, 262 U.S. 390, 400-01 (1923) (recognizing the

18  "power of parents to control the education of their own" in

19  abolishing a state law banning the teaching of the German

20  language).

21       The FAC alleges that, "by bringing RVCA under the CCFA,

22  California substitutes its judgment with that of the parents on

23  matters of religion and moral issues," and denies the Parent

24  Class "an exclusively faith-based residential educational

25  option."  FAC ¶¶ 99, 100.  It further alleges that "enrolling

26  their children in a school that is regulated and under the

27  jurisdiction of the California Department of Social Services is

28  not tenable for the Parent Class."  FAC ¶ 101.  But the FAC

                                    8

overstates the power of the CCFA to affect the decision-making authority of parents with children currently enrolled at RVCA. Unlike in Meyers or Pierce, the CCFA does not compel or prevent Williams or his child to engage in any particular behavior. The CCFA does not require parents to enroll their children in community care facilities that may be subject to the CCFA. And Williams is not required to send his child to RVCA, nor is he prevented from enrolling his child at a religious boarding school of his choosing. The CCFA's application to RVCA does not meaningfully interfere with Williams' ability to raise his child in the way he sees fit. Williams has, therefore, failed to show that he has sustained or is in immediate danger or sustaining a direct injury as a result of the CCFA.

Furthermore, Williams' challenges to specific provisions of the CCFA, like that which states students are to be "free to attend religious services or activities of his/her choice and to have visits from the spiritual advisor of his/her choice," 22 CCR § 80072, are based on hypothetical injuries. Williams asks this Court to imagine a situation in which RVCA is required to admit a student who does not accept its faith statement and might request access to non-Christian services that are not provided by RVCA. This Court is not convinced such a situation would ever arise given that RVCA is a private facility that is free to admit students as it chooses and can deny students who do not accept its faith statement. Federal courts cannot issue advisory opinions in hypothetical cases. Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (The court's "role is neither to issue advisory opinions nor to

declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."). Thus, because his alleged injury is neither real nor immediate, Williams failed to establish an injury in fact for his parental rights claim that meets the requirements for standing. Accordingly, the Court DISMISSES Plaintiff's Fourteenth Amendment claim WITHOUT PREJUDICE.

## III. ORDER

For the reasons set forth above, Plaintiff Carlton Williams lacks standing to pursue his claims and the suit is DISMISSED WITHOUT PREJUDICE. See Fleck & Assocs., Inc. v. City of Phoenix, 471 F.3d 1100, 1106-07 (9th Cir. 2006) (holding that dismissal for lack of standing should be without prejudice).

Because Plaintiff lacks standing, this Court need not address whether Plaintiff adequately stated a claim under Rule 12(b)(6). Fleck, 471 F.3d at 1102 ("Because [the plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction and should have dismissed the complaint on that ground alone."). If Plaintiff intends to file an amended complaint, he must do so within twenty days of the date of this Order. Defendants responsive pleading is due within twenty days thereafter. If Plaintiff elects not to file an amended complaint, the clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: September 18, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE